UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

                                               Docket No.:
                                               19 CR 91-004 (DLC)

            v.

                                               **CARLOS ROBLEDO-**
                                               **ANEZ'S**
                                               **SENTENCING**
                                               **MEMORANDUM**

CARLOS ROBLEDO-ANEZ,

            Defendant.
_____


                                               /s/
                               LAW OFFICE OF ROBERT OSUNA, P.C.
                               By:  Robert Osuna, Esq.
                               *Attorney for Defendant*
                               *Carlos Robledo-Anez*
                               11 Park Place, Suite 1100
                               New York, NY 10007
                               Tel. 212.233.1033
                               Fax. 646.201.4495
                               robertosunapc@yahoo.com


To:


**Honorable Denise Cote**                         **Stephanie M. McMahon**
United States District Court Judge,     United States Probation Officer
United States District Court              United States Probation
Southern District of New York

**Samuel Adelsberg, Matthew Hellman, David Robles**
Assistant United States Attorneys
Office of the U.S. Attorney
Southern District of New York

**Table of Contents**

Topic                                                                                                         Page

Introduction…………………………………………………………………………2
The Plea of Guilt…………………………………………………………………….7
The Pre-Sentence Investigation Report……………………..………….. 7
The Advisory Guideline Range ………………………………………………... 7
Status of Co-Defendants Already Sentenced……………………………………..8
Unduly Harsh Conditions of Covid Confinement…………………………….10
Mr. Robledo-Anez's Family Support……………………………………....11
Conclusion ……………………………………………………………………..12

**Exhibits**

A. Letters of Support from Family.
B. Family Photographs

1

*A. Introduction*

Mr. Carlos Robledo-Anez (hereinafter, "Mr. Robledo-Anez") stands before Your Honor having pled guilty to one count of Conspiracy to Import Cocaine into the United States in violation of 21 U.S.C. §§812, 959(a), 959(d), 960(a)(3), 960(b)(1)(B)(ii), and 963, and one count of Manufacturing and Distributing with Intent to Import Cocaine into the United States in violation of 21 U.S.C. §§812, 959(a), 959(d), 960(a)(3) and 960(b)(1)(B)(ii), and 18 U.S.C. §3238.

He faces a statutory minimum of 10 years and a maximum of life imprisonment with a range of at least 5 years of supervised release to life. His advisory sentencing guidelines range is 135 to 168 months' incarceration, however, he satisfies the conditions set forth in 18 U.S.C. §3553(f) for relief from the statutory minimum.

Mr. Robledo-Anez participated in a cocaine trafficking conspiracy in which at least 5 kilograms of cocaine were imported into the United States from Bolivia. Count 2 of the indictment specifies that in or around September 2018, Mr. Robledo-Anez conspired to manufacture and possess with intent to distribute more than 5 kilograms of cocaine for the purposes of importing the drug into the United States.

In or around July 2018, confidential sources were introduced to Mr. Robledo-Anez, who told them that he had previous drug trafficking experience that involved large quantities of cocaine.  During this single meeting, he explained to the confidential sources the logistics that are involved in trafficking such large quantities: the flight patterns, bribery of law enforcement

officials, and the use of his almond-export business in furtherance of the shipments. He then telephoned a family member to discuss bribing government officials. After the meeting, he paid $5,000.00 to co-defendant Londono-Vanegas in support of a test shipment of cocaine to Miami, Florida. The flight took place as planned and shortly after its arrival, law enforcement seized the cocaine.

Aside from that single meeting, Mr. Robledo-Anez had no further participation in in the wider conspiracy. He never even was alleged to have followed up on the $5,000,00 investment he made into the test shipment.

The Government alleges that Mr. Robledo-Anez and others conspired to import more than 450 kilograms of cocaine during the course of the investigation. Mr. Robledo-Anez was arrested on May 5, 2021 and has been detained since that time.

Mr. Robledo-Anez is 56 years old, born and raised in Santa Cruz de la Sierra, Bolivia. His parents separated prior to his birth in 1966 and were divorced in 1967. His mother remarried again seven years later. Mr. Robledo-Anez reports that despite his father's absence, the father did provide financial support, and when his mother remarried, Mr. Robledo-Anez had a very close relationship with his stepfather.

When he was young, Mr. Robledo-Anez grew up along with his now-deceased brother in a rural area where his family raised livestock. He had all of his basic needs met and lived in a household free of domestic violence and substance abuse.

Mr. Robledo-Anez married Beticia "Betty" Garcia in 1988. They met during college at Universidad Mayor de San Simon and are still married. While attending the University, Mr. Robledo-Anez studied architecture, but did not complete his studies.

Prior to his arrest, Mr. Robledo-Anez operated his family's cattle ranch and chestnut farm. The ranch business involves buying and selling livestock and is now managed by Ms. Garcia. The couple are parents of three children: Oscar Miguel Robledo Guardia (attorney), Carlos Arturo Robledo Garcia (co-manager of the cattle ranch along with his mother), and Maria Karla Robledo Guardia (law student, model, actor). Although both his father and stepfather are deceased, Mr. Robledo-Anez's mother is still alive, however, she had a brain aneurism in 2017 and is not aware of his current situation.

This case was a marked departure from the life Mr. Robledo-Anez had previously led. He had always been a law-abiding citizen, from a good and stable home. He was a good and faithful husband, and a loving and supportive father. He had resided out in the Bolivian countryside where he had lived always as basically a farmer.

During the period in question, Mr. Robledo-Anez and his wife had relocated to the Bolivian Capitol, Santa Cruz. There my client opened a small real estate office and his wife opened adjacent to the office, a small restaurant. In the real estate office, Mr. Robledo-Anez also brokered vehicles for auto sellers and buyers and there was where Mr. Robledo-Anez was introduced to this conspiracy.

Bolivia is of course a very small and poor nation. It was abundantly clear to Mr. Robledo-Anez which individuals were involved in illicit trading. These were the individuals renting expensive homes and these were the individuals buying expensive cars.

It was in that small office Mr. Robledo-Anez tried to be something he had never been in his life: a person involved in narcotics trafficking.

Wisely, after having committed the offenses herein, Mr. Robledo-Anez realized the individuals he had conspired with, and the individuals he was meeting regularly as clients for cars and real estate were individuals far more sophisticated and criminally savvy than he.

Mr. Robledo-Anez shortly thereafter closed this office and his wife's restaurant and retreated back to the life he had always led to that of a farmer.

After my clients meeting, which is the basis of this indictment, there was a meeting scheduled by the co-conspirators in Panama where indeed some of the co-defendants were arrested. Mr. Robledo-Anez himself had been invited to that meeting and was afraid to attend. He was well aware his conduct had already been a serious transgression of law and he sought to not further any more criminal conduct.

These issues are mentioned to demonstrate that in the arc of Mr. Robledo-Anez' life this criminal conduct was short lived, and he quickly retreated from any further criminal behavior. His appearance in the wider conspiracy was brief and also short lived.

At the time of his pre-sentence interview, Mr. Robledo-Anez reported that he has had various health related issues over the last twenty years, including a herniated disc (L5),

diverticulitis, high blood pressure, and hemorrhoids. He is currently being treated by a doctor at MDC Brooklyn and is prescribed medication for hypertension and assistance in passing liquids. He has no history of mental health problems, alcohol, or substance abuse.

Mr. Robledo-Anez has no criminal history. This is his first offense, and he recognizes that he made a very poor decision when he chose to involve himself in the instant conspiracy. The Court should also consider Mr. Robledo-Anez's compliance in this case. He openly and quickly accepted responsibility for his actions and acknowledges that he owes a debt that must be repaid. He did not prevent the investigation from unfolding, and quickly resolved this matter by pleading guilty.

In spite of his past, Mr. Robledo-Anez has much to be hopeful for.  He maintains a close relationship with his family in Bolivia that will welcome him upon his release.

The Government and Mr. Robledo-Anez both agreed that either side could seek a downward or upward departure from the Stipulated Guidelines range. Mr. Robledo-Anez has fully accepted responsibility for his actions and is aware of the seriousness of his crime. I again ask that the Court consider Mr. Robledo-Anez's participation in the instant case relative to the conduct of the co-defendants in this conspiracy.

In consideration of this agreement and in light of the above-mentioned factors, I am requesting the Court to sentence Mr. Robledo-Anez to 30 months of imprisonment with credit for time served.  As Counsel, I of course understand this sentencing request is a significant departure from the advisory Guideline range and the recommendation made by Probation. However given my clients lack of a prior criminal record, his age, his education, his

extraordinary family support, and his limited involvement in the wider conspiracy, such a sentence would be sufficient but not greater than necessary to fulfill the requirements of 18 U.S.C. § 3553.

B.   *The Plea of Guilt*

Mr. Robledo-Anez pled guilty before this Court on February 17, 2022. He signed the Plea Agreement entered into with the Government and satisfactorily allocuted his guilt.

C.   *The Pre-Sentence Investigation Report*

Counsel takes no objection to the Pre-Sentence Investigation Report and agrees with it in all substantive respects. Of note, the Probation Report recommends a below advisory Guideline sentence on 120 months. See PSR at 21. "[W]e note that Robledo-Anez is a first-time offender with the benefit of both education and a prior history of gainful employment notwithstanding this involvement in this offense. The defendant also appears to have a loving and supportive family willing to assist with his future endeavors."

D.   *The Advisory Guideline Range*

There is no dispute as to the Advisory Guideline range as stated in the Presentence Investigative Report. The total offense level is 33 with a criminal history category of I due to Mr. Robledo-Anez's lack of any criminal convictions prior to this offense. His guideline range is 135 to 168 months, however, he meets all the factors set forth in 18 U.S.C. §3553(f)(1)-(5), so the Court shall impose a sentence pursuant to the guidelines without regard to any statutory minimum sentence.

E.      Status of Co Defendants Already Sentenced

In determining a sentence, the Court should consider the nature of Mr. Robledo-Anez's conduct in comparison with co-defendants previously sentenced. The two individuals already sentenced by this Court had involvement far greater than that of Mr. Robledo-Anez.

Percy Arturo Vazquez pled guilty to the conspiracy and received a sentence of 120 months for conduct that included introducing a confidential source to Bolivian military officials to discuss pricing options for exporting cocaine from Bolivia using military cargo planes. The confidential sources in this matter met with him on numerous occasions over several months. Vasquez accepted $15,000.00 for a 5-kilogram sample and $30,000.00 for payment of transportation costs of the cocaine to the United States.

In comparing the conduct of my client with that of Mr. Vasquez-Drew I refer to the Governments Sentencing Submission in that case at page 3, Document 47 in this case, filed 8/27/20:

"Starting in May 2017, the DEA recorded meetings between the CSes, Vasquez-Drew, and his co-conspirators. CS-1 first met with the defendant in approximately June 2017 in Bogota, Colombia to discuss exporting large quantities of cocaine from Bolivia to the United States. PSR ¶ 14. **During their discussions, Vasquez-Drew told CS-1 that through his connections in the military, he could access an MD-11 aircraft—a military cargo plane—in order to transport 60 tons of cocaine**. Id. Vasquez-Drew also noted that he and other drug traffickers had been able to operate with impunity in Bolivia because the DEA and the CIA had been "kicked out" of the country several years ago, and the only remaining drug enforcement officials were willing to take bribes from Vasquez-Drew to facilitate drug trafficking. Vasquez-Drew and CS-1 also discussed details about Vasquez-Drew's cocaine laboratories (including the fact that Vasquez-Drew had access to a laboratory of his own), as well as pricing, and logistics for a sample delivery of cocaine to the United States. Vasquez-Drew consistently used terms familiar to those with deep experience in the drug industry including "bricks" to refer to kilograms of cocaine and "kitchens" to refer to laboratories. Vasquez-Drew also described previously sending his then-pregnant wife to Miami to facilitate the shipment of disassembled small aircraft to Bolivia to be used to "air-drop" cocaine exported through Peru. Following the meeting in Colombia, Vasquez-Drew sent CS-1 the following photograph, which depicts dozens

8

of kilograms of cocaine stamped "ORO."" Emphasis added, photograph of kilograms of cocaine stamped omitted.

Mr. Vasquez-Drew was sentenced to 120 months prison.

Victor Rojas-Bascope pled guilty to the conspiracy and received a sentence of 150 months for conduct that included months long participation in meetings to discuss the logistics of transporting cocaine from Bolivia to the United States and agreeing to send a 5-kilogram sample. He also participated in a money laundering operation in New York City to facilitate the payment for transporting the cocaine. He accepted the $30,000.00 cash payment and deposited that money into a bank in the United States. He later transferred $28,500 to his brother in Bolivia. Rojas-Bascope also participated in a separate money laundering conspiracy in which he was paid to receive wire transfers (drug proceeds) from third parties and wire those funds to his brother in Bolivia.

In the Rojas-Bascope sentencing submission, Document 109, filed 9/19/21, at Page 4 the Government noted

"During the May 10, 2018, meeting, the defendant [Rojas-Bascope]and CS-1 also discussed the details of the larger 1,500-kilogram cocaine load, which was initially addressed during their April 2018 meeting. Id. at ¶ 18. The parties discussed the transportation of the Cocaine Sample to Miami, and how it would be delivered, via motor vehicle, to New York City. Id. CS-1 indicated that CS-1 had five customers in New York City, who would each receive 1 kilogram of cocaine. Id. The defendant conveyed that he needed $30,000 to be made available by CS-1 in Bolivia in order for the Cocaine Sample to be shipped out the next day. Id. The defendant demonstrated to CS-1 during the May 10, 2018 meeting that he was familiar with drug trafficking and money laundering prices and concepts. Id. The defendant also proposed to CS-1 that CS-1 and the other CSes should work with him and his brother, rather than Londono and Vasquez-Drew, regarding drug trafficking and money laundering." Emphasis supplied.

The sentence imposed in the case before Your Honor was imposed concurrent with a separate indictment for similar conduct in the Southern District of Florida.

9

Counsel in no way minimizes the seriousness of Mr. Robledo-Anez' conduct.

Even participation at one meeting where such quantities of drugs are discussed is a serious violation of law and must be punished. Similarly, a single investment of $5,000.00 in a test shipment of kilogram weight of illegal drugs is another serious breach of our laws.

The co-defendants conduct was far greater than that of my client and I ask the Court to consider this factor in fashioning an appropriate sentence. See 18 U.S.C § 3553(a)(6), *United States v. Florez*, 447 F3d 145, 157 (2nd Cir. 2006).

F.   *Covid Incarceration has been unduly harsh and is an appropriate factor to consider at sentencing*

During the entirety of my client's incarceration, he has been held under Covid confinement conditions. While I personally commend the Bureau of Prisons for their heroic efforts in the face an historic pandemic, the conditions have indeed been brutal.

Inmates at MDC in Brooklyn have suffered through almost continuous lockdowns, a lack of programs, diminished access to legal counsel and in many cases diminished health services.

Courts in this jurisdiction have taken note and have adjusted sentences accordingly.  See *Brutal conditions in NYC jails during COVID pandemic caused federal judges to impose lighter sentences: analysis* By Stephen Rex Brown and Noah Goldberg, New York Daily News, published Jul 11, 2021.

> "*A Daily News analysis of 43 cases involving people who could not afford their own attorneys shows that judges in Manhattan and Brooklyn federal courts-imposed sentences that were on average 58% lower than what federal guidelines recommended.*
>
> *In nearly all of the cases, judges either cited coronavirus conditions behind bars in their sentences, or attorneys emphasized the conditions in legal briefs.*
>
> *In one case in July 2020, Judge Paul Engelmayer noted that punishment for Juan Carlos Aracena De Jesus' illegal reentry into the U.S. after being deported was never supposed to include catching coronavirus.*
>
> *"I am mindful ... that you have served most of your time in prison so far during the worst pandemic in this country during the past 100 years," Engelmayer said. "I'm mindful that your experience in prison as a result of the pandemic, the preceding lockdown, the ensuing lockdown, and your own illness was frightful. Prison is supposed to be punishment, but it is not supposed to be trauma of that nature or close."*
>
> *While the sentence guidelines in the case was for 30-37 months, Engelmayer sentenced Aracena to time served. He had spent six months at the Metropolitan Correctional Center in Manhattan.*
>
> *Judge Paul Oetken went so far as to come up with a formula for how much credit inmates should receive toward a sentence if they were behind bars during the pandemic.*
>
> *"I do believe that because it's been harsher than a usual period that it's more punitive, that it's essentially the equivalent of either time and a half or two times what would ordinarily be served," Oetken said on April 2 while sentencing a low-level crack dealer.*"

In determining an appropriate sentence in this case, I do ask this Court to strongly consider the unduly harsh conditions of confinement Mr. Robledo-Anez has had to endure.

F.   Mr. Robledo-Anez's Extraordinary Family Support

In addition to various professional records, Counsel has annexed hereto numerous letters of support from Mr. Robledo-Anez's family, who have continued to stand by him throughout this matter. My client's nuclear family has flown here from Bolivia to personally attend the sentencing hearing.

The letters of support are annexed hereto as **Exhibit A**. His family is heartbroken that he involved himself in this conspiracy, and that as a consequence, he will not participate in family events for the foreseeable future. The letters reveal that Mr. Robledo-Anez was an integral part

of his family's lives, and they are deeply saddened at the prospect of him serving a lengthy prison sentence.

Mr. Robledo-Anez's daughter Maria Karla Robledo Guardia would like the Court to know that her father is her "best friend" and "confidant," a role model for a husband and father. She stressed his community collaboration and strong work ethic. While she understands the serious nature of her father's offense, she wants the Court to know that he is more than the man who pled guilty to this conspiracy and hopes that the Court "see[s] the innocence of my beloved father."

Mr. Robledo-Anez's wife, Betty Guardia de Robledo, stresses that her husband is a devoted family member who "gave his life, soul and heart to his family every day." Son Carlos Arturo Robledo Guardia also mentions how his father was not only "an architect by profession," but also the "architect of our [family's] lives." A man that worked diligently to create and grow his cattle ranch and chestnut business.

Similarly, son Oscar Miguel Robledo Guardia writes that his father guided all his sons to strive for success in their careers, but also remember to help those in need. In determining sentencing, Mr. Robledo Guardia asks the Court to judge him in a manner that is "correct and fair."

Other support letters on behalf of Mr. Robledo-Anez's include those of his godchild and nieces. All of them miss Mr. Robledo-Anez greatly and want him to come home. They ask for this Court's consideration on their own behalf.

G.   *Conclusion*

Counsel respectfully asks this Court to sentence Mr. Robledo-Anez to 30 months' incarceration with credit for time served for the instant offenses.

Mr. Robledo-Anez has admitted to his wrongdoing and is looking forward to correcting the harm he caused. He has a support network of family who are eager to see him accomplish this goal. When imposing sentence, Counsel requests that the Court consider the nature of Mr. Robledo-Anez's involvement in the conspiracy relative to the behavior of the co-defendants in this matter.

Therefore, in the instant matter, a sentence of 30 months' incarceration is wholly appropriate. Such a sentence reflects the seriousness of Mr. Robledo-Anez's conduct, his lack of criminal history and characteristics, provides for general deterrence, and promotes respect for the law. Mr. Robledo-Anez understands that this is appropriate, yet he looks forward to the future, and hopes that with the support of his loved ones, he can put his life back together.

Dated:     June 1, 2022
           New York, NY                    _____*Robert Osuna*_____
                                           Law Office of Robert Osuna, PC
                                           By:   Robert Osuna, Esq.
                                           *Attorney for Mr. Carlos Robledo-Anez*
                                           11 Park Place, Suite 1100
                                           New York, NY 10007
                                           212.233.1033 telephone
                                           646.201.4495 facsimile
                                           robertosunapc@yahoo.com